[Crim. No. 3429.   First Dist., Div. Two.   Aug. 19, 1958.]

THE PEOPLE, Respondent, v. SAMUEL LOUIS JOHNSON, Appellant.

James W. Funsten, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—On May 9, 1957, the appellant was indicted on six counts as follows: "(1) Unlawful possession of narcotics on April 10, 1957; (2) Unlawful sale of narcotics on April 10, 1957; (3) Unlawful transportation of narcotics on April 10, 1957; (4) Unlawful possession of heroin on April 16, 1957; (5) Unlawful sale of heroin on April 16, 1957; (6) Unlawful transportation of heroin on April 16, 1957 (Health and Safety Code, § 11500)." Appellant entered a plea of not guilty and denied the prior narcotic convictions charged by the indictment as subsequently amended. At the trial, on motion of the district attorney, the transportation counts (Nos. 3 and 6) and the allegations of two of the prior convictions were dismissed. Appellant then admitted the remaining prior felony convictions. The jury found the appellant guilty of the remaining four counts, possession of narcotics on April 10, 1957, sale of narcotics on April 10, 1957; possession of narcotics on April 16, 1957, and sale of narcotics on April 16, 1957. Appellant's motion for a new trial was denied. The court sentenced the appellant to the state prison for the term prescribed by law, with the terms for Counts 1 and 2 for sale and possession on April 10, 1957 to be served concurrently

with each other, but consecutively with the terms for Counts 1 and 2 for sale and possession on April 16, 1957. This appeal is taken from the judgment and the order denying appellant's motion for a new trial.

The facts are as follows: John Keeys testified that in 1957, he was working as an undercover agent for the State Bureau of Narcotics, in the Fillmore area of San Francisco. To avert suspicion, he arranged to be seen around the neighborhood with a girl named "Candy" who was known as a narcotic addict. Keeys had been informed that the appellant was a peddler of narcotics. Around April 7 or April 8, Keeys was introduced to the appellant by a man known as "Scotty." On April 10, 1957, Keeys saw the appellant in a pool hall next door to the Manor Plaza Hotel. Keeys asked the appellant if he could buy a five dollar "paper." Appellant agreed to make the sale. They walked to a lavatory in the rear of the pool hall. Appellant pulled out a finger stall containing four or five "papers" and sold one to Keeys. Keeys left the pool hall, returned to his hotel and put the purchase into a locked compartment in his room. The following day, Keeys gave the paper to an inspector of the State Bureau of Narcotic Enforcement. On analysis by the state chemist, the "paper" was found to contain a grain and a half of heroin. About a week later, on April 16, Keeys again met the appellant by chance in the pool hall. Again, he and the appellant went to the lavatory, where the appellant sold him a "paper" for $5.00 from several in a finger stall. On this occasion there were several other people in the lavatory. The second "paper" on analysis by the state chemist, was found to contain one and a half grains of heroin.

The appellant was the only witness in his own behalf. He testified that he had been introduced to Keeys by "Scotty" and that Keeys had then asked him about buying some narcotics. He said he knew nothing about such a sale. He had seen Keeys around the neighborhood with "Candy" and that he had occasionally played pool with Keeys. He admitted seeing Keeys in the pool hall on April 10, and April 16, but denied possessing narcotics on the days or making a sale to Keeys on either occasion. Appellant stated that the substance of his conversations with Keeys on the dates in question was a girl and some money which Keeys tried to borrow from the appellant to buy narcotics for a girl. On cross-examination, appellant indicated that he was familiar with various terms used by narcotics addicts.

Appellant contends that under the rule of *People* v. *Roberts*, 40 Cal.2d 483 [254 P.2d 501] he was improperly convicted of both possession and sale of narcotics, as the alleged possession was merely incidental to the sale. ■ As pointed out in *People* v. *Branch*, 119 Cal.App.2d 490, at 495 and 496 [260 P.2d 27]:

"The case [*People* v. *Roberts*] is based upon the interpretation of section 654 of the Penal Code as made by the Supreme Court in *People* v. *Knowles*, 35 Cal.2d 175 [217 P.2d 1], and *People* v. *Kehoe*, 33 Cal.2d 711 [204 P.2d 321]. (See also *People* v. *Logan*, 41 Cal.2d 279 [260 P.2d 20]; *People* v. *Greer*, 30 Cal.2d 589 [184 P.2d 512]; *People* v. *Clemett*, 208 Cal. 142 [280 P. 681].) That code section embodies a rule of law somewhat broader than the double jeopardy rule and its corollary of included offenses. It provides that 'An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one.' Under the rule of this section, as interpreted by the Supreme Court, a single criminal act, whether it gives rise to included offenses or not, can only be punished once. By this section, it is indispensable in order to impose separate punishments that there be evidence of separate and divisible acts that are not incidental to each other. In determining this question the courts have refused to dissect the evidence minutely in an attempt to find separate offenses, but, on the contrary, have held that a broad transactional approach should be made."

■ In *People* v. *Moore*, 143 Cal.App.2d 333 at page 341 [299 P.2d 691], this court said, quoting from *In re Chapman*, 43 Cal.2d 385, 389, 390 [273 P.2d 817]: " 'The applicability of section 654 depends upon whether a separate and distinct act can be established as the basis of each conviction. (Citation.) . . . It is only when the two offenses are committed by the same act or when that act is essential to both that they may not both be punished.' "

■ Respondent argues that the proof necessarily established possession distinct from that incidental to the sale to Keeys. The argument is that appellant, on each occasion here involved, sold Keeys but one of several "papers." The others, which appellant retained after the sales, are claimed to have contained heroin. Thus, says respondent, the rule of *People* v. *Tenney*, 162 Cal.App.2d 458 [328 P.2d 254] (1st Dist., Div. 1, Crim. No. 3441, filed July 31, 1958) and of *People* v. *Holliday*, 120 Cal.App.2d 562 [261 P.2d 301] applies and

there is clear evidence that the convictions of possession were based upon different facts than the convictions of sale. But in those cases, possession independent of the other offense charged was conclusively shown. Here, if the jury believed that appellant selected at random the paper sold to Keeys, it could infer that the papers Keeys retained contained heroin. But the jury was not instructed upon this issue, and we cannot say that the jury must, as a matter of law, have drawn this inference. Thus our case differs from those cited. There was no direct evidence that the papers retained by appellant contained heroin and, to determine this to be the fact, the jury could act only upon circumstantial evidence. ▊ In such case the court must, upon its own motion, instruct that where circumstantial evidence is susceptible of two constructions, both reasonable, the jury must adopt the construction pointing to innocence rather than that indicating guilt. (*People* v. *Merkouris*, 46 Cal.2d 540 [297 P.2d 999] ; *People* v. *Bender*, 27 Cal.2d 164 [163 P.2d 8].) ▊ No such instruction was here given. Thus we cannot accept respondent's contention that the jury necessarily found facts which would support the charges of possession independently of those of sale.

Appellant complains of some items of evidence admitted. In one instance, the answer was clearly responsive to a question asked upon cross-examination by appellant, who elected to conduct questioning himself, in addition to the examination by his counsel. ▊ In the other instances, as in the case of the claimed impropriety in argument by the district attorney, neither objection nor motion to strike was made. In each instance the error, if any, could have been cured by admonition. Thus the claimed error cannot be asserted here.

The judgment is reversed as to the counts charging possession, and affirmed as to those charging sale.

Dooling, J., and Draper, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 15, 1958.