THE STATE OF OHIO, APPELLEE, *v.* HOPKINS, APPELLANT.

(No. 616—Decided February 17, 1962.)

*Mr. John A. Neatherton,* for appellee.
*Mr. Gerald E. Schlafman,* for appellant.

CRAWFORD, P. J. Defendant, appellant herein, was convicted of arson in the burning of the barn and contents of Paul W. Bingamon, R. R. 2, Jamestown, Ohio, on the Port William-Jamestown Road, on the early morning of February 13, 1960.

An important part of the state's evidence consisted of oral and written confessions of the defendant given to law enforcement officers. The first assignment of error is that these extrajudicial confessions were introduced in evidence before there was any evidence tending to prove the corpus delicti.

A leading case in Ohio on this subject is that of *State* v. *Maranda*, 94 Ohio St., 364. The syllabus of that case is as follows:

"1. By the *corpus delicti* of a crime is meant the body or substance of the crime, included in which are usually two elements: 1. The act. 2. The criminal agency of the act.

"2. It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the *corpus delicti*, before such confession is admissible. The *quantum* or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a *prima facie* case. It is sufficient if there is *some* evidence outside of the confession that tends to prove *some* material element of the crime charged."

It will be noted that this case, like others, indicates that there must be some evidence of the corpus delicti other than an extrajudicial confession before such confession is *competent* or *admissible*. We have found no case holding that it is prejudicially erroneous to admit the confession in evidence before such other evidence is produced, if such other evidence is presented at some point during the trial.

But be that as it may, in the present case there was some such other evidence, part of which was introduced before the confessions. Perhaps this evidence was not as clear and positive as in many other cases. But the necessary quantum of such evidence has never been defined.

"It will be noted from the Ohio cases cited, as well as from the text of approved authorities on criminal law and procedure, that no court has yet undertaken to declare a fixed and fast rule as to the *quantum* of additional or outside evidence necessary

to supplement or corroborate a confession before such confession shall be admissible. They do agree, however, that the outside evidence need not be proof beyond a reasonable doubt, or even a *prima facie* case of guilt against the defendant, but that there must be *some* proof, not necessarily direct and positive, usually but circumstantial, tending to prove the fact that a crime was committed. If such additional or outside circumstances are offered tending to prove the guilt of the accused as charged and are corroborative of an extrajudicial confession, such confession, if otherwise voluntary and competent, should be admitted. It would be error to exclude such confession, or withdraw the same from the consideration of the jury.

"The commission of arson is as common nowadays as the convictions for arson are uncommon. It is a crime difficult to prove at best. The more complete the burning, the less the evidence surviving. * * *" *State* v. *Maranda, supra* (94 Ohio St., 364), at pp. 370, 371.

"* * * The corpus delicti may be established by circumstantial evidence where the inference of the happening of the criminal act complained of is the only probable or natural explanation of the proved facts and circumstances." 15 Ohio Jurisprudence (2d), 621, Criminal Law, Section 455.

In this case there was evidence of several circumstances tending to prove the corpus delicti: The owners were at their farm home near the barn, knew of nothing amiss when they retired for the night, and were awakened just before midnight to find the barn enveloped in flames; the barn and its contents were completely destroyed; simultaneously with the Bingamon fire two other barns in the immediate vicinity were also destroyed by fire, and an abortive attempt had been made the same evening to set fire to still another barn located approximately a 25-minute-drive distant in the adjacent county of Clinton. Upon investigation by expert authorities all natural and accidental causes of the fires were eliminated.

"There are three leading cases in Ohio dealing with the question of *corpus delicti* in connection with what is known as extrajudicial confessions.

"The first leading case is *Blackburn* v. *State of Ohio*, 23 Ohio St., 146, decided in 1872. The third paragraph of the syllabus reads as follows:

" 'Although extrajudicial confessions alone are not sufficient to prove the body of the crime in cases of homicide, they may be taken and used for that purpose in connection with other evidence.'

"The second case is the *State of Ohio* v. *Leuth,* 5 C. C., 94, decided in 1890, in which case a motion for leave to file a petition in error was denied by the Supreme Court of Ohio. The third paragraph of the syllabus reads as follows:

" 'This confession before the coroner was not a judicial confession, and it was necessary that there should be other proof of the *corpus delicti*; but it is not necessary that the agency of the accused should be proved by other evidence which *alone* would prove the guilt of the accused beyond a reasonable doubt.'

"The third case is *State of Ohio* v. *Knapp,* 70 Ohio St., 380, decided in 1904. The third paragraph of the syllabus reads as follows:

" 'If the facts extrinsically proved by the state corroborate the confession, then full, direct and positive evidence of the *corpus delicti* is not indispensable to admit the confession in evidence; and if such extrinsic corroborative facts, when considered with the confession, persuade the jury beyond a reasonable doubt of the prisoner's guilt as charged, such evidence will support a verdict of guilty. *Blackburn* v. *State,* 23 Ohio St., 146, approved and followed.'

"From the foregoing Ohio cases it seems to be conclusively settled:

"1. That an extrajudicial confession is not sufficient in and of itself to sustain a conviction of a crime.

"2. That *some* corroborating circumstances tending to prove criminal agency should be offered by the state before such extrajudicial confession is competent." *State* v. *Maranda, supra* (94 Ohio St., 364), at p. 368 ff.

In the present case part of the evidence of the corpus delicti above set forth having already been introduced, the confessions were properly admitted. The further evidence of the corpus delicti subsequently introduced lends further justification to their admission.

The first assignment of error is not well taken.

The second assignment of error was the admission of evidence of other fires. In his confessions the defendant estimated

that in the course of a few years he had set fire to 35 or more buildings, barns and bridges, including the Bingamon barn, the other three barns set fire on the same night of February 12 and 13, 1960, and the attempt to burn a covered bridge in the same general area on September 11, 1960. He stated that his methods were either the use of kerosene or the igniting of hay stored in the barns.

His confessions contain such comments as these: "I got a lot of excitement out of ringing the fire alarm bells in the school." "I also receive a great deal of joy and get a big thrill out of watching these fires burn." "I set these fires that I have told about in this statement for the thrill and because I got some sexual thrills from setting the fires. I get sudden strong urges or feelings, and I am not satisfied until I set a fire." There is frequent repetition of the theme, "I set this fire because I needed some sexual gratification which I could get from seeing a fire blaze."

This incendiary career, disclosed by defendant's confessions, constitutes a total course of conduct which is not easily divisible. Hence, these confessions were of such a nature that they were admissible as a whole. See 15 Ohio Jurisprudence (2d), 581, Criminal Law, Section 408; 20 American Jurisprudence, 426, Evidence, Section 489.

There was additional testimony regarding the other three barn fires on the night of the offense charged and of the later attempt to burn the bridge.

These other barn fires were so closely related to the offense charged, in nature, time and place, that the evidence outside the confessions regarding them was clearly admissible under Section 2945.59, Revised Code. They tend to prove intent, motive, scheme, plan, system, absence of mistake or accident, etc.

Defendant claims the bridge episode was too remote in time to be admissible. The statute makes other acts of the defendant admissible "whether they are contemporaneous with or prior or subsequent" to the offense charged.

It is not often that other acts in evidence are simultaneous with the offense charged. The attempt to burn the bridge seven months later is remote only by comparison. Remoteness is always comparative. The trial court must be permitted a reasonable latitude in determining what is too remote and what is not.

His decision to admit this evidence was, in our opinion, reasonable and proper.

The propriety of such ruling is supported by the fact that this episode was also contained in the confession, that strong evidence outside the confessions tended to connect defendant with it, and that one of his acknowledged techniques was employed. Kerosene and a container for it were found at the bridge, and a witness testified he had sold the defendant kerosene in such a container shortly before.

In his general charge the trial judge carefully limited the purposes for which these other occurrences might be considered by the jury.

The second assignment of error is not well taken.

Assignments of error numbers three and five question the weight of the evidence.

The confessions, being, as we found, properly admitted into the evidence, are to be considered along with the other evidence in the case.

The defendant was apprehended in Houston, Texas, in connection with a fire which he admitted starting in a boxcar. While there, on December 13 and 16, 1960, he was interrogated as to the present and other offenses in Ohio and elsewhere. In his answers he displayed some familiarity with the burning of the Bingamon barn and its contents and with other fires in the same vicinity and elsewhere which he admitted setting. The jury was justified in finding that the confessions were true.

The record amply supports the action of the court in overruling defendant's motions for directed verdict at the end of the state's evidence, and renewed at the close of all the evidence, and the evidence justified the jury's verdict of guilty.

The third and fifth assignments of error are not well made.

The fourth assignment of error complains of the refusal of the court to give the following special charges requested by defendant before argument:

1. "The court instructs you as a matter of law that all persons are presumed to be sane until proven insane. But if a person has been declared insane by a court of competent jurisdiction and is under a guardian, the presumption of sanity is not only removed, but a presumption arises to the contrary."

2. "The court instructs you as a matter of law that the

state of Ohio has the care, custody, control, and treatment of all persons mentally ill, and of each person who is received into any hospital under the control of the division of mental hygiene.''

There is considerable evidence of defendant's mental weakness. He was at the time of the offense an escapee from the Athens State Hospital. His abnormal motives for setting the fires were stated in his confessions.

Prior to trial the court had placed him under observation at the Lima State Hospital, which reported him to be sane. After conviction and before sentence the court again ordered him to the Lima State Hospital for sixty-days observation. The report of the superintendent at the end of that period was: ''* * * In our opinion he would not be considered mentally ill, nor a mentally deficient offender. He would, however, be considered a psychopathic offender.''

Defendant pleaded not guilty and was tried upon that plea. There was no plea of not guilty by reason of insanity. When his counsel was introducing the testimony of Dr. H. H. Fockler, psychiatrist and Superintendent of the Athens State Hospital, and was met with an objection by the state, he explained that ''The purpose of the introduction of the medical records of the defendant by Dr. Fockler is to give proper weight and credibility to the confessions and statements of the defendant, William Hopkins.''

Such evidence was properly received for that purpose. The requested special charges are not thus limited in their application. Without entering a plea of not guilty by reason of insanity, defendant was not in a position to insist upon the giving of these special charges in the general form in which they were framed. They would have been likely to confuse the jury in considering the issues which were properly raised.

We find no assignment of error well taken.

The judgment will be, and hereby is, affirmed.

*Judgment affirmed.*

KERNS and SHERER, JJ., concur.